# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **TANYA WARREN,**<br>**LARRY WARREN,**<br><br>        **Plaintiffs,**<br><br>   **v.**<br><br>**BOEHRINGER INGELHEIM**<br>**PHARMACEUTICALS, INC.,**<br>**BOEHRINGER INGELHEIM**<br>**INTERNATIONAL GmbH, ELI LILLY**<br>**AND COMPANY, and LILLY USA,**<br>**LLC, ABC CORPORATIONS, 1-10,**<br>**JOHN DOES, 1-10, AND JANE DOES,**<br>**1-10,**<br><br>        **Defendants.** | **COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>**Case No.  1:16-cv-1326** |

Plaintiffs, TANYA WARREN and LARRY WARREN, by and through the undersigned counsel, upon information and belief, at all times hereinafter mentioned, allege as follows:

## NATURE OF THIS COMPLAINT

1. Plaintiff in this action seeks compensation for injuries resulting from use of defective prescription drug JARDIANCE for the treatment of type 2 diabetes.

2. Defendants, BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., BOEHRINGER INGELHEIM INTERNATIONAL GmbH, ELI LILLY AND COMPANY, and LILLY USA, LLC, ABC CORPORATIONS, 1-10, JOHN DOES, 1-10, AND JANE DOES, 1-10, (hereinafter collectively referred to as "Defendants") directly or through their agents,

1

apparent agents, servants or employees, designed, manufactured, marketed, advertised, licensed, distributed, and/or sold JARDIANCE.

3.     Consumers of JARDIANCE, including Plaintiff, and their physicians relied on Defendants false representations and were misled as to JARDIANCE's safety and efficacy, and as a result have suffered injuries including life-threatening diabetic ketoacidosis.

4.     Defendants concealed, and continue to conceal, their knowledge of JARDIANCE's unreasonably dangerous risks from Plaintiff, other consumers, and the medical community.

5.     As a result of the defective nature of JARDIANCE, persons who were prescribed and ingested JARDIANCE, including Plaintiff, have suffered and may continue to suffer injuries including life-threatening diabetic ketoacidosis.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiff and Defendants.

7.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Defendants conduct substantial business in this District.

8.     This Court has personal jurisdiction over Defendants because they have done business in the State of Indiana, have committed a tort in whole or in part in the State of Indiana, have substantial and continuing contact with the State of Indiana, and derive substantial revenue from goods used and consumed within the State of Indiana. Defendants actively sell, market and

promote their product JARDIANCE to physicians and consumers in this state on a regular and consistent basis.

## PARTIES

**Plaintiffs**

9.      Plaintiff, TANYA WARREN, at all times relevant hereto, is a citizen and resident of the State of Louisiana and is domiciled in the Town of Olla.

10.     Plaintiff-Spouse, LARRY WARREN, at all times relevant hereto, is a citizen and resident of the State of Louisiana and is domiciled in the Town of Olla.

11.     Plaintiff has suffered personal injuries as a direct and proximate result of Defendants' conduct and misconduct as described herein and in connection with, inter alia, the design, development, manufacture, testing, packaging, promotion, advertising, marketing, distribution, labeling, warning, and sale of their product JARDIANCE.

12.     Plaintiff files this lawsuit within the applicable limitations period of first suspecting that said drug caused the applicable harm sustained by Plaintiff. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of Plaintiff's injuries as their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, that Plaintiff had been injured, the cause of the injuries, or the tortious nature of the product causing the injuries, until less than the applicable limitations period prior to the filing of the action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendants misrepresented and continue to misrepresent to the public and to the medical community that JARDIANCE is safe and free from serious side effects, and Defendants have fraudulently concealed facts and information that could have led Plaintiff to discover potential causes of action.

**Defendants**

13.     Defendant BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. ("Boehringer") is a Delaware corporation which has its principal place of business at 900 Ridgebury Road, Ridgefield, Connecticut 06877.

14.     Defendant BOEHRINGER INGELHEIM INTERNATIONAL GmbH ("Boehringer International") is a foreign corporation with its principal place of business located at Boehringer Ingelheim GmbH, Binger Strasse 173, 55216 Ingelheim am Rhein, Germany.

15.     Defendant ELI LILLY AND COMPANY is a corporation organized and existing under the laws of Indiana with its principal place of business located at Lilly Corporation Center, Indianapolis, Indiana 46285.

16.     Defendant LILLY USA, LLC is a limited liability company operating as a wholly-owned subsidiary of Defendant ELI LILLY AND COMPANY, with its principal place of business located at Lilly Corporate Center, Indianapolis, Indiana 46285.

17.     Defendants ABC CORPORATIONS, 1-10, are fictitious names, corporations, or other similar entities who were engaged in the business of manufacturing, selling, or supplying, marketing, designing, and/or distributing JARDIANCE for the treatment of type 2 diabetes.

18.     Defendants JOHN DOES, 1-10, are fictitious names, corporations, other similar entities, or individuals who were engaged in the business of manufacturing, selling, or supplying, marketing, designing, and/or distributing JARDIANCE for the treatment of type 2 diabetes.

19.     Defendants JANE DOES, 1-10, are fictitious names, corporations, other similar entities, or individuals who were engaged in the business of manufacturing, selling, or supplying, marketing, designing, and/or distributing JARDIANCE for the treatment of type 2 diabetes.

20.     Upon information and belief, Defendants are involved in design, development, manufacture, testing, packaging, promotion, advertising, marketing, distribution, labeling, warning, and sale of their pharmaceutical products including JARDIANCE.

21.     Upon information and belief, Defendants have transacted and conducted business in the United States of America and in the State of Indiana, more particularly.

22.     Upon information and belief, Defendants have derived substantial revenue from goods and products used in the United States of America and in the State of Indiana, more particularly.

23.     Upon information and belief, Defendants expected or should have expected its acts to have consequence within the United States of America and the State of Indiana, and derived substantial revenue from interstate commerce within the United States of America and the State of Indiana.

## FACTUAL BACKGROUND

**General Allegations**

24.     This action is for damages brought on behalf of Plaintiff who was prescribed and took the prescription drug JARDIANCE for the treatment of type 2 diabetes. This action seeks, among other relief, general and special damages and equitable relief due to Plaintiff suffering severe and life threatening side effects of diabetic ketoacidosis caused by JARDIANCE.

25.     JARDIANCE is a member of gliflozin class of pharmaceuticals also known as sodium glucose co-transporter 2 ("SGLT2") inhibitors.

26.     SGLT2 inhibitors, including JARDIANCE, inhibit renal glucose reabsorption through the SGLT2 receptor in the proximal renal tubules, causing glucose to be excreted

through the urinary tract instead of reabsorbed into the blood stream thereby putting additional strain on the kidneys.

27.     SGLT2 inhibitors, including JARDIANCE, are designed to target primarily the SGLT2 receptor, but have varying selectivity for this receptor, and block other sodium-glucose cotransporter receptors, including SGLT1.

28.     The SGLT2 and SGLT1 receptors are located throughout the body, including in the kidney, intestines, and brain.

29.     SGLT2 inhibitors, including JARDIANCE, are currently approved only for improvement of glycemic control in adults with type 2 diabetes.

30.     At all times herein mentioned, Defendants were engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale or selling the prescription drug JARDIANCE for the usage and application by patients with diabetes, but not limited to, Plaintiff.

31.     Though JARDIANCE is indicated for only improved glycemic control in type 2 adult diabetics, Defendants have marketed and continue to market JARDIANCE for off-label purposes, including but not limited to treatment of type 1 diabetes, weight loss, and blood pressure.

32.     Consumers, including Plaintiff, who have used JARDIANCE for the treatment of type 2 diabetes, have several alternative safer products available to treat the conditions.

33.     Since JARDIANCE's release, the United States Food and Drug Administration ("FDA") has received a significant number of reports of diabetic ketoacidosis among users of JARDIANCE.

34.     In September 2015, the FDA announced that one of SGLT2 inhibitors, Invokana, causes premature bone loss and fractures.

35.     In December 2015, the FDA requested the manufacturers of SGLT2 inhibitors to add warnings to SGLT2 inhibitors, including JARDIANCE, about the risks of ketoacidosis.

36.     At all times herein mentioned, the officers and directors of Defendants participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiff.

37.     Defendants, both individually and in concert with one another, misrepresented that JARDIANCE is a safe and effective treatment for type 2 diabetes mellitus when in fact the drug causes serious medical problems which require hospitalization and can lead to life threatening complications, including but not limited to diabetic ketoacidosis and its sequelae, kidney failure and its sequelae, as well as serious cardiovascular problems.

38.     Specifically, Defendants knew or should have known of the risks of diabetic ketoacidosis and kidney failure based on the data available to them or that could have been generated by them, including, but not limited to animal studies, mechanisms of action, pharmacodynamics, pharmacokinetics, pre-clinical studies, clinical studies, animal models, genetic models, analogous compounds, analogous conditions, adverse event reports, case reports, post-marketing reports, and regulatory authority investigations, including, but not limited to the following:

     a.   JARDIANCE selectivity for the SGLT1 receptor;

     b.   Animal studies demonstrating increased ketones when given JARDIANCE;

    c.  Studies of SGLT1 inhibitor phlorizin and its propensity to cause ketoacidosis;

    d.  Reports involving people with familial glycosuria, indication of a propensity to develop ketoacidosis;

    e.  Clinical studies demonstrating increases in glucagon in people taking JARDIANCE;

    f.  Clinical studies, adverse event reports, and case reports demonstrating increased ketones in people taking JARDIANCE;

    g.  Clinical studies, adverse event reports, and case reports demonstrating dehydration and volume depletion in people taking JARDIANCE;

    h.  Clinical studies, adverse event reports, and case reports demonstrating vomiting in people taking JARDIANCE;

    i.  Clinical studies, adverse event reports, and case reports demonstrating re-challenge responses in increasing ketones and diabetic ketoacidosis in people taking JARDIANCE;

    j.  Adverse event report analysis demonstrating an increased rate of reports for ketoacidosis in people taking JARDIANCE compared to other glucose-lowering medications.

39.    Diabetic ketoacidosis may lead to complications such as cerebral edema, pulmonary edema, cerebrovascular accident, myocardial infarction, nonspecific myocardial injury, severe dehydration, and coma.

40.    JARDIANCE induced diabetic ketoacidosis may lead to delayed treatment because in many cases JARDIANCE will keep blood sugar below 250 mg/dl, a threshold often used when diagnosing diabetic ketoacidosis. This may result in increased progression of the condition and increased injury to the patients.

41.    Defendants were aware that the mechanism of action for JARDIANCE places extraordinary strain on the kidneys and renal system.

42.    Despite its knowledge of data indicating that JARDIANCE usage is causally related to the development of diabetic ketoacidosis and kidney failure, Defendants promoted and

8

marketed JARDIANCE as safe and effective for persons such as Plaintiff throughout the United States of America, including the State of Indiana.

43.     Despite Defendants' knowledge of the increased risk of severe injury among JARDIANCE users, Defendants did not warn patients but instead continued to defend JARDIANCE, mislead physicians and the public, and minimize unfavorable findings.

44.     Defendants failed to adequately warn consumers and physicians about the risks associated with JARDIANCE and the monitoring required ensuring their patients' safety.

45.     Despite Defendants' knowledge of the increased risk of severe injury among JARDIANCE users, Defendants did not conduct the necessary additional studies to properly evaluate these risks prior to marketing the said drug to the general public.

46.     Consumers of JARDIANCE and their physicians relied on the Defendants' false representations and were misled as to the drug's safety, and as a result have suffered injuries including diabetic ketoacidosis, kidney failure, cardiovascular problems, and the life-threatening complications thereof.

47.     Consumers, including Plaintiff, have several alternatives safer methods for treating diabetes, including diet and exercise and other anti-diabetic agents.

**Case-specific Allegations**

48.     Plaintiff was prescribed JARDIANCE by an endocrinologist and used it as directed.

49.     Plaintiff was prescribed JARDIANCE 10 mg to be taken once by mouth daily to improve glycemic control on or about February 4, 2015.

50.     While taking JARDIANCE, Plaintiff suffered diabetic ketoacidosis on or about May 28, 2015 as a result of treatment with JARDIANCE and was hospitalized at Rapides Regional Medical Center located at 211 Fourth Street, Alexandria, Louisiana 71301.

51.     Plaintiff has endured pain and suffering, emotional distress, loss of enjoyment of life, and economic loss, including significant expenses for medical care and treatment which will continue in the future.

52.     Defendants' wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiff's injuries and damages.

53.     Plaintiff's injuries were preventable and resulted directly from Defendants' failure and refusal to conduct proper safety studies, failure to properly assess and publicize alarming safety signals, suppression of information revealing serious and life threatening risks, willful and wanton failure to provide adequate instructions, and willful misrepresentations concerning the nature and safety of JARDIANCE. The conduct and the product defects were substantial factor in bringing about Plaintiff's injuries.

54.     Defendants had a duty to warn Plaintiff's physicians about the risks of JARDIANCE usage, including the risk of diabetic ketoacidosis and resulting complications.

55.     Had Plaintiff and Plaintiff's physicians known the risks associated with the use of SGLT2 inhibitors, including JARDIANCE, Plaintiff would not have been prescribed JARDIANCE, and Plaintiff would not have taken JARDIANCE, or Plaintiff would have been adequately monitored for its side effects and as a result, would not have suffered injuries and damages from using JARDIANCE.

56.     Plaintiff's prescribing and treating physicians relied on claims made by Defendants that JARDIANCE has been clinically shown to improve glycemic control and was

generally safe and effective. These claims reached Plaintiff's prescribing and treating physicians directly, through print and television advertising, articles and study reports funded and promoted by Defendants, and indirectly, through other healthcare providers and others who have been exposed to Defendants' claims through their comprehensive marketing campaigns.

57.     Plaintiff relied on claims made by Defendants that JARDIANCE has been clinically shown to improve glycemic control and was generally safe and effective. These claims reached Plaintiff directly, through print and television advertising, and indirectly, through Plaintiff's healthcare providers and others who have been exposed to Defendants' claims through their comprehensive marketing campaigns.

58.     Based on Defendants' direct to consumer advertising and Defendants' misrepresentations and omissions, Plaintiff made an independent decision to use JARDIANCE based on the overall benefits and risks communicated by Defendants.

59.     Plaintiff's injuries were reasonably foreseeable consequence of Defendants' conduct and misconduct, JARDIANCE's hazards, and were not reasonably foreseeable to Plaintiff or Plaintiff's physicians.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Strict Liability – Design Defect

60.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

61.     Defendants designed, developed, researched, tested, licensed, manufactured, packaged, labeled, promoted, marketed, sold, and distributed JARDIANCE in a defective and unreasonably dangerous condition, including the JARDIANCE used by Plaintiff.

62.     The design defect was caused by Defendants' failure to:

a.   Develop and provide product label, and marketing materials that accurately describes the risk of and does not overstate the benefits of using JARDIANCE;

b.   Provide full, complete, and accurate information to the FDA about JARDIANCE;

c.   Adequately test and study JARDIANCE;

d.   Ensure that the benefits of JARDIANCE outweighed the risks for people susceptible to diabetic ketoacidosis, kidney failure, or other adverse effects;

e.   Conduct adequate post-market surveillance;

f.   Use a safer alternative formulation.

63.   The design defect rendered JARDIANCE more dangerous than an ordinary consumer would expect and more dangerous than other drugs used to treat diabetes.

64.   This danger was unknowable to Plaintiff and would be considered unacceptable to the average consumer.

65.   The design defect was such that the risks of JARDIANCE outweighed its utility.

66.   There were practical and technically feasible alternative drugs that would not have reduced the utility of JARDIANCE and would not have cost substantially more to develop, including, but not limited to providing a better warning with JARDIANCE, using an alternative diabetes treatment, or developing a SGLT2 inhibitor with a different safety profile.

67.   The label is part of the design of JARDIANCE, and therefore the design can be changed. Specifically, the label could have included a contraindication for people whose ketones increase, which would have alerted doctors and patients that the drug JARDIANCE is not suitable for that population because the risks outweigh the benefits.

68.   Defendants' defective design of JARDIANCE was reckless, willful, wanton, fraudulent, malicious, and one with reckless disregard for the health and safety of users of JARDIANCE.

69.     Defendants made conscious decisions not to redesign, adequately warn, or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages. Defendants' conduct was motivated by greed and the intentional decision to value profits over the safety and well-being of the consumers of JARDIANCE.

70.     Plaintiff was prescribed and used JARDIANCE for its intended purposes and for purposes that Defendants expected and could foresee.

71.     Defendants expected and intended JARDIANCE to reach, and it did in fact reach, Plaintiff without any substantial change in the condition of the product from when it was initially manufactured by Defendants.

72.     Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known of the design defects.

73.     Plaintiff and Plaintiff's physicians did not have the same knowledge or expertise as Defendants and could not have discovered any defect in JARDIANCE through the exercise of reasonable care.

74.     As a direct and proximate cause of Defendants' manufacture, sale and promotion of the defectively designed drug, Plaintiff sustained permanent injury.

75.     By reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### SECOND CLAIM FOR RELIEF
### Strict Liability – Failure to Warn

76.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

77.     Defendants are liable under the theory of product liability set forth in §§ 402A and 402B of the Restatement of Torts 2d and Restatement, third of torts.

78.     Defendants designed, developed, researched, tested, licensed, manufactured, packaged, labeled, promoted, marketed, sold, and distributed JARDIANCE in a defective and unreasonably dangerous condition, including the JARDIANCE used by Plaintiff. The design defect made JARDIANCE more dangerous than an ordinary consumer would expect and more dangerous than other drugs used to treat diabetes.

79.     JARDIANCE's inadequate warnings rendered JARDIANCE unreasonably dangerous and defective.

80.     Defendants' defective warnings for JARDIANCE were reckless, willful, wanton, fraudulent, malicious, and done with reckless disregard for the health and safety of users of JARDIANCE. Defendants made conscious decisions not to adequately warn about risks they know or should have known about. Defendants' reckless conduct warrants an award of punitive damages. Defendants' conduct was motivated by greed and the intentional decision to value profits over the safety and well-being of the consumers of JARDIANCE.

81.     Plaintiff was prescribed and used JARDIANCE for its intended purposes and for purposes that Defendants expected and could foresee.

82.     Defendants expected and intended JARDIANCE to reach, and did in fact reach, Plaintiff without any substantial change in the condition of the product from when it was initially manufactured by Defendants.

83.     Plaintiff could not have discovered the unwarned risks of using JARDIANCE through the exercise of reasonable care.

84.     Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that the warnings and other relevant information and data which they distributed regarding the risks of injuries associated with the use of JARDIANCE were incomplete and inadequate.

85.     Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiff or to Plaintiff's physicians. The warnings that were given by Defendants were not accurate and were incomplete.

86.     Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, supply, warn, and take other such steps as necessary to ensure that JARDIANCE did not cause users to suffer from unreasonable and dangerous risks.

87.     Defendants knew or should have known that the limited warnings disseminated with JARDIANCE were inadequate, but they failed to communicate adequate information on the dangers and safe use of its product, taking into account the characteristics of and the ordinary knowledge common to physicians who would be expected to prescribe the drug. In particular, Defendants failed to communicate warnings and instructions to doctors that were appropriate and adequate to render the product safe for its ordinary, intended, and reasonably foreseeable uses, including the common, foreseeable, and intended use of the product for treatment of diabetes.

88.     As a direct and proximate cause of Defendants' manufacture, sale and promotion of the defectively designed drug and failure to warn Plaintiff and Plaintiff's physicians about the significant risks inherent in JARDIANCE, Plaintiff sustained permanent injury.

89.    By reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### THIRD CLAIM FOR RELIEF
### Negligence

90.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

91.    At all times relevant times, Defendants had a duty to use reasonable care to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of JARDIANCE.

92.    At all times material hereto, Defendants had actual knowledge, or in the alternative, should have known through the exercise of reasonable and prudent care, of the hazards and dangers of JARDIANCE to cause or increase the harm of diabetic ketoacidosis, kidney failure, cardiovascular problems, and the life threatening complications of those conditions.

93.    Defendants had a duty to exercise due care and avoid unreasonable risk of harm to others when developing and selling JARDIANCE.

94.    Defendants had a duty to disclose to physicians, healthcare providers, and patients the causal relationship or association of JARDIANCE to diabetic ketoacidosis, kidney failure, cardiovascular problems and the life threatening complications of those conditions.

95.    Defendants had a duty to accurately communicate the risks and benefits of JARDIANCE to physicians, healthcare providers, and patients.

16

96.     As a result of the Defendants' aggressive marketing campaigns promoting off-label uses, including treatment of type 1 diabetes, weight loss, improved blood pressure, improved kidney function, Defendants knew or should have known and expected that consumers would use JARDIANCE for such off-label uses.

97.     Defendants knew or should have known that some patients would develop serious injuries that were not adequately warned about, including diabetic ketoacidosis, kidney failure, and cardiovascular injury and these injuries were foreseeable.

98.     Plaintiff did not know the nature and extent of the injuries that could result from JARDIANCE and was misinformed about the benefits of JARDIANCE and could not have discovered this information independently.

99.     At all times herein mentioned, Defendants breached their duty of care by failing to exercise reasonable and ordinary care and negligently and carelessly manufacturing, designing, formulating, distributing, compounding, producing, processing, assembling, inspecting, distributing, marketing, labeling, packaging, preparing for use, and selling JARDIANCE, and failing to adequately test and warn of the risks and dangers of JARDIANCE.

100.    Despite the fact that Defendants knew or should have known that JARDIANCE caused unreasonable, dangerous side effects, Defendants continued to market JARDIANCE to consumers including Plaintiff, when there were safer alternative methods available.

101.    Defendants' negligence was a foreseeable and proximate cause of the Plaintiff's injuries, harm and economic loss which Plaintiff suffered, and will continue to suffer, as described and prayed for herein.

102.     By reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### FOURTH CLAIM FOR RELIEF
### Negligent Misrepresentation

103.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

104.     Defendants made misrepresentations to Plaintiff's physicians, Plaintiff, and the general public from the time JARDIANCE was first tested until now. The misrepresentation includes but is not limited to the misrepresentation that JARDIANCE is safe, fit, and effective for human consumption.

105.     Defendants owed a duty to Plaintiff to exercise reasonable care and ensure they did not misrepresent the safety or efficacy of JARDIANCE.

106.     Defendants failed to exercise that reasonable care and have therefore breached their duty to Plaintiff.

107.     Defendants had a duty to correct these material misstatements because they knew or should have known these statements were false and others would reasonable rely on them and suffer injury.

108.     These misrepresentations were made directly by Defendants, by agents of the Defendants, and in written material directed to physicians, medical patients, and the public, with the intention of inducing reliance and the prescription, purchase, and use of the subject product.

109.     The representations by Defendants were in fact false, in that JARDIANCE is not safe, fit, and effective for human consumption, using JARDIANCE is hazardous to health, and

JARDIANCE has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff.

110.     By reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## FIFTH CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability

111.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

112.     Defendants impliedly warranted to Plaintiff and Plaintiff's physicians and healthcare providers that JARDIANCE was of merchantable quality and safe and fit for the use which it was intended.

113.     Plaintiff reasonably relied entirely on the skill, judgment, and implied warranty of the Defendants when using JARDIANCE.

114.     As a result, Plaintiff used Defendants' product as it was warranted and intended.

115.     JARDIANCE was not of merchantable quality, as warranted by Defendants because it was dangerous when used as intended and can cause severe injuries to consumers.

116.     At all relevant times, Plaintiff used JARDIANCE for the purpose and in the manner intended by Defendants.

117.     Plaintiff and Plaintiff's physicians, by the use of reasonable care could not have discovered the breached warranty and realized its danger.

118.     The breach of warranty was a substantial factor in bringing about Plaintiff's injuries.

119.    As a direct and proximate result of the aforementioned breach of implied warranties by Defendants, Plaintiff suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, and pain and suffering, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

120.    By reason of the foregoing, Defendants are liable to Plaintiff for compensatory damages in an amount to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### SIXTH CLAIM FOR RELIEF
### Breach of Express Warranty

121.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

122.    Defendants expressly warranted to Plaintiff's physicians and Plaintiff by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts, marketing, and other written materials intended for physicians and the public that JARDIANCE is safe, effective, fit and proper for its intended use, of merchantable quality, had been adequately tested, contained adequate warnings, and was effective.

123.    The "Warnings and Precautions" section of the JARDIANCE prescribing information purports to expressly describe the relevant and material side effects that Defendants knew or should have known about.

124.    In particular the Consumer Medication Guide did not include any language that would suggest JARDIANCE has been associated with diabetic ketoacidosis, kidney failure, blood infections, or kidney infections.

20

125.    Plaintiff's physician prescribed JARDIANCE and Plaintiff consumed JARDIANCE reasonably relying on these warranties. Plaintiff's physician and Plaintiff could not have learned independently that Defendants were false and misleading.

126.    Defendants knew or should have known Plaintiff would rely on their warranties.

127.    Plaintiff reasonably relied on the skill, judgment, representations, and foregoing express warranties of Defendants.

128.    The warranties and representations are false. JARDIANCE can cause diabetic ketoacidosis, kidney failure, blood infections, and kidney infections.

129.    JARDIANCE does not conform to Defendants' express representations; therefore, Defendants have breached the express warranties.

130.    The breach of express warranties by Defendants was a foreseeable, direct, and proximate cause of Plaintiff's injuries and damages.

131.    By reason of the foregoing, Defendants are liable to Plaintiff for compensatory damages in an amount to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### SEVENTH CLAIM FOR RELIEF
### Fraudulent Misrepresentation

132.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

133.    Defendants intentionally and fraudulently misrepresented the safety and efficacy of JARDIANCE in the product label.

134.    Specifically Defendants intentionally and fraudulently:

a.    Provided a "Warnings and Precautions" section of the JARDIANCE prescribing information that purports to expressly describe the relevant and material potential

side effects that Defendants knew or should have known about, but in which material and relevant information was fraudulently withheld from this section;

b.  Provided Consumer Medication Guide that expressly indicates "What is the most important information I should know about JARDIANCE?" and "What are the possible side effects of JARDIANCE?" and "General information about the safe and effective use of JARDIANCE" and fraudulently omits information JARDIANCE has been associated with diabetic ketoacidosis, kidney failure, or cardiovascular adverse events;

c.  On information and belief, each and every advertisement and marketing channel fraudulently omits information about the risks of JARDIANCE and overstates the benefits;

d.  Failed to disclose that JARDIANCE was not as safe and effective as other diabetes drugs;

e.  Failed to disclose that JARDIANCE does not result in safe and more effective diabetes treatments than other available drugs;

f.  Failed to disclose that the risk of harm associated with JARDIANCE was greater than the risk of harm associated with other diabetes drugs;

g.  Failed to disclose that Defendants knew that JARDIANCE was not adequately tested;

h.  Failed to disclose that testing had revealed unreasonably high risk of injury;

i.  On information and belief, failed to disclose that Defendants intentionally withheld safety information from the FDA; and

j.  Affirmatively asserted that JARDIANCE was safe and effective.

135.  Defendants knew that their representations were false, yet they willfully, wantonly and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of JARDIANCE to Plaintiff, other consumers, Plaintiff's physicians, and the medical community.

136.  The representations were made by Defendants with the intent that doctors and patients, including Plaintiff and Plaintiff's physicians, rely upon them.

137.    Defendants' representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, Plaintiff's physicians, and the medical community to induce and encourage the sale of JARDIANCE.

138.    Defendants in advertisements through their respective websites and press releases, stated that the drug JARDIANCE was generally well tolerated and safe for use and was not likely to cause side effects other than the ones listed – these listed side effects did not include diabetic ketoacidosis, renal injury or renal failure, bone fractures, etc. Plaintiff, Plaintiff's physicians, and others relied upon these representations.

139.    As a foreseeable, direct, and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiff suffered diabetic ketoacidosis and other related health complications. In addition, Plaintiff requires and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, loss of wages and other losses and damages. Plaintiff's direct medical losses and costs include physician care, monitoring, and treatment. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

140.    By reason of the foregoing, Defendants are liable to Plaintiff for compensatory damages in an amount to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### EIGHTH CLAIM FOR RELIEF
### Fraudulent Concealment

141.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

142.    Defendants knew that JARDIANCE was defective, unreasonably unsafe, and that its risks were understated.

143.    Defendants willfully, intentionally and fraudulently concealed their knowledge of this from Plaintiff's physicians, Plaintiff, and the general public.

144.    Defendants withheld information that they had a duty to disclose through JARDIANCE's labeling, advertising, marketing materials, seminal presentations, publications, notice letters, and regulatory submissions that JARDIANCE was safe and effective.

145.    Defendants withheld information about the severity of the substantial risks of using JARDIANCE and their knowledge of the safety signals regarding adverse effects of JARDIANCE.

146.    Defendants withheld information that JARDIANCE was not safer or more effective than alternative diabetes medications available on the market.

147.    The above facts were material that would have been considered important to a reasonable person.

148.    Had the above facts been disclosed, Plaintiff would not have taken JARDIANCE and Plaintiff's physicians would not have prescribed it.

149.    Defendants had a duty to disclose this information to Plaintiff's physicians and Plaintiff.

150.    Defendants knew or should have known and intended that Plaintiff's physicians and Plaintiff would rely on the inaccurate information they provided.

151.    Defendants' fraudulent concealment of the truth is a direct and proximate cause of Plaintiff's injuries and damages.

152.     By reason of the foregoing, Defendants are liable to Plaintiff for compensatory damages in an amount to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**NINTH CLAIM FOR RELIEF**
**Violation of Consumer Protection Laws**

153.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

154.     Plaintiff used JARDIANCE and suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

155.     Defendants used unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

     a.    Representing that goods or services have characteristics, ingredients, uses benefits or quantities that they do not have;

     b.    Advertising goods or services with the intent not to sell them as advertised; and

     c.    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding;

156.     Defendants violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of JARDIANCE.

157.     Defendants violated consumer protection laws, specifically Indiana Unfair Trade Practices and Consumer Protection Law Ind. Code Ann. 24-5-0.5-3. Defendants uniformly communicated the purported benefits of JARDIANCE while failing to disclose the serious and dangerous side effects related to the use of JARDIANCE and the true state of JARDIANCE's safety, efficacy, and its usefulness. Defendants made these representations to physicians, the

medical community at large and to patients such as Plaintiff, in the marketing and advertising campaign described herein.

158.     Defendants conduct in connection with JARDIANCE was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding because Defendants misleadingly, falsely, and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy, and advantages of JARDIANCE.

159.     As a result of these violations of consumer protection laws, Plaintiff have incurred serious physical injury, pain, suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital expenses and other expense related to the diagnosis and treatment thereof, for which the Defendants are liable.

160.     By reason of the foregoing, Defendants are liable to Plaintiff for compensatory damages in an amount to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### TENTH CLAIM FOR RELIEF
**Loss of Consortium**

161.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

162.     At all relevant times stated herein, Plaintiff-Spouse, Larry Warren, has suffered injuries and losses as a result of Plaintiff's injuries.

163.     For the reasons set forth herein, Plaintiff-Spouse has necessarily paid and have become liable to pay for medical aid, treatment and for medications, and will necessarily incur further expenses of a similar nature in the future as a proximate result of Defendants' misconduct.

164.    For the reasons set forth herein, Plaintiff-Spouse has suffered and will continue to suffer the loss of his spouse's support, companionship, services, society, love and affection.

165.    Plaintiff-Spouse alleges that the marital relationship has been impaired and depreciated, and the marital association between husband and wife has been altered.

166.    Plaintiff-Spouse has suffered great emotional pain and mental anguish.

167.    By reason of the foregoing, Defendants are liable to Plaintiff-Spouse for compensatory and punitive damages, in amounts to be proven at trial, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### ELEVENTH CLAIM FOR RELIEF
**Punitive Damages**

168.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

169.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights, health and safety of Plaintiff and other JARDIANCE users and for the primary purpose of increasing Defendants' profits from the sale and distribution of JARDIANCE. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

170.    Prior to the manufacturing, sale, and distribution of JARDIANCE, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of

harm to the public, including Plaintiff and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or death from using JARDIANCE.

171.    Despite their knowledge, Defendants, acting through its officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in JARDIANCE and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in JARDIANCE. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of JARDIANCE knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest and monetary profits.

172.    Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiff, entitling Plaintiff to exemplary damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment against each of the Defendants as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiff, as follows:

1.  General damages in an amount that will conform to proof at the time of trial;

2.  Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;

3.  Loss of earnings and impaired earning capacity according to proof at the time of trial;

4.  Medical expenses, past and future, according to proof at the time of trial;

5.  For past and future mental and emotional distress, according to proof;

6.  Damages for loss of care, comfort, society, and companionship in an amount within the jurisdiction of this Court and according to proof;

7.  For punitive or exemplary damages according to proof;

8.  Restitution, disgorgement of profits, and other equitable relief;

9.  Injunctive relief;

10. Attorneys' fees;

11. For costs of suit incurred herein;

12. For pre-judgment interest as provided by law; and

13. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all claims so triable.


Dated: May 27, 2016               */s/* Robert T. Dassow _____
                                  Robert T. Dassow, Esq.
                                  **Hovde Dassow & Deets**
                                  10201 N. Illinois Street, Ste. 500
                                  Indianapolis, IN 46290
                                  Telephone: 317-818-3100
                                  E-mail: rdassow@hovdelaw.com

                                  Daniel C. Burke, Esq.
                                  **BERNSTEIN LIEBHARD LLP**
                                  10 E. 40th Street
                                  New York, NY 10016
                                  Telephone: 212-779-1414
                                  E-mail:  dburke@bernlieb.com
                                  E-mail:  dlee@bernlieb.com

                                  *Attorneys for Plaintiffs*