## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

TANYA WARREN,
LARRY WARREN,

        PLAINTIFFS,

v.

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM
INTERNATIONAL GmbH; ELI LILLY
AND COMPANY; and LILLY USA, LLC,

        DEFENDANTS.

CIVIL ACTION NO. 1:16-CV-01326-SEB-DML

**JURY TRIAL DEMANDED**

### DEFENDANTS ELI LILLY AND COMPANY AND LILLY USA, LLC'S
### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Eli Lilly and
Company and Lilly USA, LLC (together "Lilly") file this Memorandum in Support of their
Motion to Dismiss the claims of Plaintiffs Tanya and Larry Warren.

## I.     INTRODUCTION

This is a personal injury action concerning Jardiance, a prescription drug
approved by the Food and Drug Administration ("FDA") for the treatment of Type 2 diabetes.
Lilly co-markets Jardiance with Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI").
BIPI was and is the sole holder of the Jardiance New Drug Application ("NDA") filed with the
FDA.  Plaintiffs allege that Ms. Warren developed diabetic ketoacidosis ("DKA") as a result of
using Jardiance.  Plaintiffs assert eleven claims, each against Lilly and the BIPI entities.[1]  All of

---

[1] The non-U.S. Defendant Boehringer Ingelheim International GmbH has not been served in this action.

Plaintiffs' claims are premised on allegations that either Defendants failed to properly warn about Jardiance's risks or that the medication was defectively designed.

The Court should dismiss all of Plaintiffs' claims against Lilly because they are preempted. Federal law permits only the NDA holder to change the labeling, design, and manufacture of an FDA-approved prescription drug. Since only BIPI holds, and has ever held, the NDA for Jardiance, Lilly has never had the authority to change the drug's labeling, design, or manufacture. As a consequence, all of Plaintiffs' claims against Lilly fail, a result warranted by Supreme Court precedent. Moreover, to the extent Plaintiffs' design defect claims are premised on a failure to change the design of Jardiance, those claims are preempted as against all Defendants for an additional reason. Under Supreme Court precedent, any change to Jardiance's design as advocated by Plaintiffs would conflict with federal law, which precludes any change in formulation absent FDA approval.[2] For these reasons and the reasons set forth below, Lilly respectfully requests that its motion to dismiss be granted.

## II.    BACKGROUND

### A.    All of Plaintiffs' Claims Are Based on Failure-to-Warn or Design Defect Allegations.

"Plaintiffs in this action seek compensation for injuries resulting from use of defective prescription drug JARDIANCE for the treatment of type 2 diabetes." First Amended FAC ("FAC") at ¶ 1. Plaintiffs, "at all times relevant hereto," are and have been "citizen[s] and resident[s]" of the State of Louisiana. FAC at ¶¶ 9-10. Jardiance is an FDA-approved prescription medication indicated as an adjunct to diet and exercise to improve glycemic control

---

[2] In a separate motion, Lilly and BIPI are moving jointly to dismiss Plaintiffs' Complaint on the grounds that it does not meet the threshold pleading requirements of Fed. R. Civ. P. 8 and 9. The design defect preemption argument is more fully developed therein, and Lilly hereby incorporates § IV of Defendants Boehringer Ingelheim Pharmaceuticals, Inc. and Eli Lilly and Company, and Lilly USA LLC's Memorandum in Support of Motion to Dismiss (hereinafter, "Joint Motion") by reference.

in adults with type 2 diabetes mellitus.  FAC at ¶ 26.  Ms. Warren alleges that she began treatment with Jardiance 10mg once daily "on or about February 4, 2015."  FAC at ¶ 46.  She alleges that, as a result of ingesting Jardiance, she suffered DKA on or about May 28, 2015 and was hospitalized in Louisiana.  FAC at ¶ 47.

On May 27, 2016, Plaintiffs filed their initial Complaint (D.E. 1).  Thereafter, finding that Plaintiffs' Complaint lacked a basis for federal subject matter jurisdiction, the Court ordered Plaintiffs to file an Amended Complaint within ten days. (D.E. 4).  On June 9, 2016, Plaintiffs filed their FAC.  (D.E. 5).  Plaintiffs allege that Defendants are liable under theories of "Strict Liability – Design Defect" (First Claim), "Strict Liability – Failure to Warn" (Second Claim), "Negligence" (Third Claim), "Negligent Misrepresentation" (Fourth Claim), "Breach of Implied Warranty" (Fifth Claim), "Breach of Express Warranty" (Sixth Claim), "Fraudulent Misrepresentation" (Seventh Claim), "Fraudulent Concealment" (Eighth Claim), "Violation of Consumer Protection Laws" (Ninth Claim), "Loss of Consortium" (Tenth Claim), and "Punitive Damages" (Eleventh Claim).  Each of these purported claims is based on the same allegations— all vaguely relate to Jardiance's chemical formulation and/or what Defendants allegedly communicated about its risks.  *E.g.*, FAC at ¶¶ 3-5, 11, 29, 33-35, 38-44, 49-56, 57-71, 73-85, 87-97, 100-106, 108-116, 118-127, 129-136, 138-148, 150, 152-156, 158-160, 165-169.

The Louisiana Products Liability Act ("LPLA") provides "the exclusive theories of liability for manufacturers for damage caused by their respective products." La. R.S. § 9:2800.52.[3]  The LPLA only allows recovery if a product is "unreasonably dangerous." *Id.* at § 9:2800.54.  A product can only be unreasonably dangerous in four exclusive ways: (1) the

---

[3]. "A court sitting in diversity must apply the substantive law of the state in which it sits," including the state's conflict rules.  *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001).  For the reasons set forth in § I of the Joint Motion, accepting all of Plaintiffs' allegations as true, Louisiana law applies to Plaintiffs' claims.

product is unreasonably dangerous in construction or composition; (2) the product is

unreasonably dangerous in design; (3) the product is unreasonably dangerous because an

adequate warning about the product has not been provided; or (4) the product is unreasonably

dangerous because it does not conform to an express warranty of the manufacture.  *Id.*

        Plaintiffs do not claim that Jardiance was unreasonably dangerous in construction

or composition.[4]  Plaintiffs' allegations all pertain to claims for failure-to-warn or defective

design.  *Cf. Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466, 2473-2474 (2013) (liability

in state law products lawsuits invariably premised on defect in design or warning); *Germain v.*

*Teva Pharms., USA, Inc. (In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig)*, 756 F.3d

917., 935-936 (6th Cir. 2014) (all claims were either failure-to-warn claims or design defect

claims);  *Schrock v. Wyeth, Inc.*, 727 F.3d 1273 (10th Cir. Okla. 2013) (claims allege a duty

under state law to alter either the drug's composition or labeling); *Guarino v. Wyeth, LLC*, 719

F.3d 1245 (11th Cir. Fla. 2013)  (all claims based on allegedly inadequate warning); *Morris v.*

*Pliva, Inc.*, 713 F.3d 774 (5th Cir. La. 2013) (any claim that alleges defendant "should have

acted differently with respect to warnings" is a failure-to-warn claim).

    **B.**    **BIPI Holds Jardiance's NDA—Not Lilly**

        The FDA approved BIPI's NDA for Jardiance (*empagliflozin*) on August 1, 2014.

*See* Jardiance Approval Letter from FDA to BIPI (August 1, 2014).[5]  The FDA maintains for

public reference a list of approved products known as the "Orange Book."  *See Preface to the*

---

[4] La. R.S. § 9:2800.55 provides that "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."

[5] FDA Ref ID: 3603272, available at http://bit.ly/JardNDAApproval (last accessed Sept. 20, 2016).

*Thirty-Sixth Edition*, Orange Book (HHS 2016).[6]  Each entry in the Orange Book names the product's "applicant" (*i.e.,* the holder of the product's application).  *Id.* The Orange Book entry for Jardiance lists only BIPI.  Orange Book at 3-134; *see also Additions/Deletions For Drug Product List* at 9 (August 2014) (adding a new entry to the Orange Book for empagliflozin and listing BIPI as the sole applicant).  At all relevant times BIPI was the exclusive holder of the NDA for Jardiance.

## III.    LEGAL STANDARD

A court may dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "plausibility" standard applies to all claims brought in federal court. *See Iqbal*, 556 U.S. at 684.

A claim is plausible only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Plaintiffs must allege enough "by way of factual content to nudg[e] [their] claim[s] . . . across the line from conceivable to plausible."  *Id.* at 683.  Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between

---

[6] The Orange Book is available on FDA's website at http://bit.ly/2aoCgmB (last accessed Sept. 20, 2016). The official title of the Orange Book is "Approved Drug Products with Therapeutic Equivalence Evaluations." *Id.* Fed. R. Civ. P. 12(d) provides that if "matters outside the pleadings are presented and not excluded by the court, the [Rule 12] motion must be treated as one for summary judgment under Rule 56." *Id.*  However, the Court may consider public documents and reports of administrative bodies without converting a motion to dismiss into one for summary judgment.  *Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 556 (7th Cir. 2012) (citing *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)).

possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted); *see also McCauley v. City of Chicago*, 671 F.3d 611, 626 (7th Cir. 2011).  Further, although a court generally must accept well-pleaded facts as true on a motion to dismiss for failure to state a claim, this principle does *not* apply to legal conclusions.  *See Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citing Fed. R. Civ. P. 8(a)); *U.S. ex rel. Prather v. Ewert*, 2013 WL 500864, at *1 (C.D. Ill. Feb. 11, 2013) ("Conclusory allegations are 'not entitled to be assumed true.'") (quoting *Iqbal*, 566 U.S. at 681).

Because this preemption challenge represents a purely legal issue, the Court should decide it at the dismissal stage—as other courts have done when faced with similar arguments.  *See, e.g.*, *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) (overturning Fifth and Eighth Circuit's rejection of preemption-based dismissal); *see also Amos v. Biogen Idec Inc.,* 28 F. Supp. 3d 164, 169 (W.D.N.Y. 2014) (granting motion to dismiss design defect claim with prejudice on preemption grounds);  *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1013 (E.D. Mo. 2014) (finding state law claims preempted by federal law on motion to dismiss).

## IV.   ARGUMENT

### A.   State Laws that Conflict with Federal Law Are Preempted

The Court should dismiss Plaintiffs' claims against Lilly because all are preempted.  The doctrine of preemption arises from the Supremacy Clause of the United States Constitution.  U.S. CONST. art. VI, cl. 2.  The Supremacy Clause provides that the Constitution, federal law, and all treaties "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

notwithstanding." *Id.* Since *McCulloch v. Maryland,* courts have consistently applied the Supremacy Clause to hold state laws in conflict with federal law to be "without effect." [7] *Cipollone v. Liggett Group*, 505 U.S. 504, 516 (1992); *see also Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963) ("A holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce.")

A recent trilogy of Supreme Court cases clarified the test for conflict preemption in the context of pharmaceutical drugs.  First, in *Wyeth v. Levine*, 555 U.S. 555 (2009), the Court explained when impossibility does *not* exist—*i.e.*, where there is a regulatory provision that expressly allows a defendant to do unilaterally what state-law requires.  *Id.* at 572-73.  Then, in *Mensing*, the Court defined "impossibility:"  "[t]he question for 'impossibility' is whether the private party could *independently* do under federal law what state law requires of it."  564 U.S. at 620 (emphasis added).  And "independently," the Court explained, meant *unilaterally*:  "to decide these cases, it is enough to hold that when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, the party cannot independently satisfy those state duties for pre-emption purposes."  *Id.*  Last, in *Mutual Pharm. Co. v. Bartlett*, the Court found that state law design defect claims that "place a duty on manufacturers to render a drug safer . . . by altering its

---

[7] Federal regulations have no less preemptive effect than federal statutes. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  "Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." *Id.* at 153-154 (citing *United States v. Shimer*, 367 U.S. 374, 381-382 (1961)).  Similarly, where an administrator has promulgated regulations, the inquiry is also limited:  "If her choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [courts] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Id.* at 154.

composition . . . are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition."  133 S. Ct. at 2479.

*Wyeth*, *Mensing*, and *Bartlett* should be viewed as "stating the same test for impossibility preemption."  *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 296-297 (6th Cir. 2015); *see also Wos. v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391, 1398 (2013) (applying *Mensing* preemption to state law purporting to impose lien on Medicaid beneficiaries' tort recoveries); *Horseman's Benevolent & Protective Ass'n Ohio Div., Inc. v. DeWine*, 666 F.3d 997, 1000–01 (6th Cir. 2012) (holding state law conflicted with federal statute requiring consent of a horseman's group to off-track wagering); *Marcus v. Forest Labs., Inc. (In re Celexa & Lexapro Mktg. & Sales Practices Litig.),* 779 F.3d 34, 43 (1st Cir. 2015) (holding failure-to-warn claim involving branded drug was preempted under *Mensing*).

The *Wyeth*, *Mensing*, and *Bartlett* trilogy provides courts with an easily-applied, *universal* framework for determining when a state-law claim is conflict-preempted.  First, courts should identify what action would be required of the defendant to satisfy the state-law duties underlying the plaintiff's claims.  Then, courts should determine whether there is a federal law or regulation that would prevent the defendant from taking that action independently.  Where federal law or regulation would prohibit the defendant from independently taking the required action, the claim is preempted.  *See Mensing*, 564 U.S. at 620.[8]

---

[8] Any decision declining to apply the *Wyeth-Mensing-Bartlett* test to branded drugs is inconsistent with *Bartlett* (in which the Supreme Court recognized that "'[o]nce a drug … whether generic or brand name … is approved, the manufacturer is prohibited from making any major changes' without seeking approval from the FDA") and contrary to the decisions of numerous courts to consider the issue.  The few district courts outside that have held otherwise should not be followed here.  *E.g., Sullivan v. Aventis, Inc.*, No. 14-cv-2939-NSR, 2015 WL 4879112 (S.D.N.Y. Aug. 13, 2015);  *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717 (E.D. Pa. 2014);  *Estate of Cassel v. Alza Corp.*, No. 12-cv-771-WMC, 2014 WL 856023 (W.D. Wis. Mar. 5, 2014).

**B.     Plaintiffs' Failure-to-Warn and Design Defect Claims Against Lilly Are Preempted Because Lilly Is Not the Jardiance NDA Holder**

As a non-holder of the Jardiance NDA, Lilly has no control over the labeling or design of Jardiance.  Federal law requires FDA approval of an NDA prior to marketing a new drug in the United States.  *Marcus,* 779 F.3d at 35-36.  Thus, FDA is the "*exclusive* judge of safety and efficacy based on information available at the commencement of marketing."  *Id.* at 41 (emphasis added).  The company that owns and controls the NDA is referred to as the "applicant."  *See* 21 C.F.R. § 314.3(b) (defining "application" and "applicant"); *see also id.* § 314.50 (describing NDA contents).  Following the FDA's approval of a new drug, proposed changes to the drug's labeling, design, or manufacture must be submitted to the FDA in the form of a "supplement" to the NDA.  *See id.* § 314.70(a)(1)(i) ("…the applicant must notify FDA about each change in each condition established in an approved application beyond the variations already provided for in the application…");  21 C.F.R. § 314.70(c)(6) ("The agency may designate a category of changes for the purpose of providing that, in the case of a change in such category, the holder of an approved application may commence distribution of the drug product involved upon receipt by the agency of a supplement for the change.");  *see also* FDA Guidance for Industry: Changes to an Approved NDA or ANDA (April 2004) (describing processes to change an approved drug's manufacturing site, manufacturing processes, product specifications, container closure system, and labeling).

Critical to the preemption analysis is *who* can submit a supplement to an approved NDA.  Federal law provides a clear answer:  only "the applicant" may do so.  *See, e.g.,* 21 C.F.R. § 314.70(a)(1)(i) ("…*the applicant* must notify FDA about each change in each condition established in an approved application beyond the variations already provided for in the application…");  *accord* 21 C.F.R. § 10.30 (providing a process whereby non-applicants may

submit citizen petitions to FDA suggesting that FDA take regulatory action);  *see also Marcus*, 779 F.3d at 41 ("a necessary step in defeating [a] preemption defense is to establish that the complaint alleges a labeling deficiency that [the manufacturer/NDA holder] could have corrected using the CBE regulation").

In this context, the Sixth Circuit has found that federal law preempted failure-to-warn claims against Lilly where Lilly did not hold the NDA for the drug at issue. *See Germain*, 756 F.3d at 940.  In *Germain*, one plaintiff brought causes of action against Lilly based on her ingestion of a Lilly-manufactured generic product after Lilly sold its NDA for the branded equivalent.[9] *Id.* at 939-940.  Lilly brought a motion for judgment on the pleadings, arguing, *inter alia*, that Lilly could not be held liable for failing to warn the plaintiff after it no longer held the NDA. *Marston v. Eli Lilly and Company*, No. 12-cv-00066 (Doc No. 62), *6 (E.D. Ky. July 31, 2012).  The trial court agreed and dismissed the claim.  *Id.* at *6.  The Sixth Circuit affirmed, finding that without the NDA "Lilly had no more power to change the label than did [a generic manufacturer]."  *Germain*, 756 F.3d at 940.

Other courts, in addition to the Sixth Circuit in *Germain*, have reached the same conclusion.  *See, e.g.*, *Brazil v. Janssen Research & Dev. LLC*, No. 4:15-CV-0204-HLM, 2016 U.S. Dist. LEXIS 93528, at *33 (N.D. Ga. July 11, 2016) ("A distributor, even of a brand name drug, 'has no power to change...labeling. That power lies with the applicant who filed the New

---

[9] *Germain* arose from a multidistrict litigation action consolidating sixty-eight claims against both generic and brand-name manufacturers for personal injuries allegedly caused by the prescription drug propoxyphene. *Germain*, 756 F.3d at 922.   Lilly originally brought propoxyphene to market in 1952 under the trade name Darvon and, then, as Darvocet in 1972. *Id.* at 923-924.  For some time thereafter, Lilly was the only manufacturer of propoxyphene-based drugs; however, following the passage of the Hatch-Waxman Act, several additional companies obtained approval to market generic versions of both Darvon and Darvocet.  *Id.* at 923.  In the following years, Lilly entered into various supply agreements, pursuant to which Lilly would manufacture generic propoxyphene products for some of these companies.  *Id.*  In 2002, Lilly sold its NDA for both Darvon and Darvocet to NeoSan Pharmaceuticals, but continued to manufacture generic propoxyphene products pursuant to its supply agreements.  *Id.*

Drug Application (NDA)'"); *In re Fosamax Prods. Liab. Litig.,* No. 2243 (JAP-LHG), 2012 U.S. Dist. LEXIS 5817 (D.N.J. Jan. 17, 2012) (power to change the label "lies with the applicant who filed the New Drug Application seeking approval to market [the product]").

These decisions are consistent with the Supreme Court's teaching in *Mensing* that courts are not to "strain to find ways to reconcile federal law with seemingly conflicting state law." *Mensing*, 564 U.S. at 622. As the *Mensing* Court observed, according to the wording of the Supremacy Clause, "a court need look no further than the ordinary meaning of federal law, and should not distort federal law to accommodate conflicting state law." *Id.* at 623. In the case of Jardiance, only BIPI holds the NDA. Lilly does not and never has. Accordingly, federal law makes it impossible for Lilly to comply with the duties underlying Plaintiffs' state-law claims. Lilly cannot change Jardiance's label or design. Because Plaintiffs' claims are based on allegations of failure to warn or defective design, all claims against Lilly are preempted.[10]

## V.     CONCLUSION

For the reasons stated above, Plaintiffs' claims against Lilly are preempted. Accordingly, Lilly respectfully requests that the Court grant its motion to dismiss with prejudice for failure to state a claim upon which relief can be granted.

Dated: September 20, 2016.                    Respectfully submitted,

ICE MILLER LLP

*s/ Mary Nold Larimore*
Mary Nold Larimore, #9877-49
Phone: 317-236-2407
Fax: 317-592-4688
Email: Larimore@icemiller.com

---

[10] To the extent that Plaintiffs would have the Court construe their claims as being premised on a duty to change Jardiance's design or labeling *prior* to FDA approval, for the reasons set forth in § IV of Defendants' Joint Motion, Plaintiffs' claims would still fail.

Nancy Menard Riddle, #15075-49
Phone: 317-236-2189
Fax:  317-592-4740
Email:  Nancy.Riddle@icemiller.com
One American Square, Suite 2900
Indianapolis, IN  46282-0200

*and*

Barry H. Boise
boiseb@pepperlaw.com
Michael Joseph Edelman
edelmanm@pepperlaw.com
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

*Counsel for Defendants Eli Lilly and Company
and Lilly USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

I further certify that some of the participants in the case are not CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid to the following non-CM/ECF participants:

Elizabeth C. Curtin                    Heidi Levine
SIDLEY AUSTIN, LLP                     SIDLEY AUSTIN, LLP
One South Dearborn                     787 Seventh Avenue
Chicago, IL 60603                      New York, NY 10019


                                       *s/ Mary Nold Larimore*
                                       Mary Nold Larimore

I\10930202.1

-12-